UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>    v.<br><br>URIBE-BAUTISTA,<br><br>    Defendant. | Case No. 13-cr-00002-RS-1<br><br>**ORDER DENYING URIBE-BAUTISTA'S 28 U.S.C. § 2255 PETITION** |

## I. INTRODUCTION

Petitioner, Gabriel Uribe-Bautista, filed a petition to vacate, set aside, or correct his conviction, judgment, and sentence pursuant to 28 U.S.C. § 2255, raising a host of constitutional claims—most of which have been denied. The lone exception is his claim that his trial counsel, Candice Mitchell, failed to file a notice of appeal after he requested she do so. Uribe-Bautista, like all defendants, had a constitutional right "to bet on the possibility of winning the appeal and then winning an acquittal, just as a poker player has the right to hold the ten and queen of hearts, discard three aces, and pray that when he draws three cards, he gets a royal flush." *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1199 (9th Cir. 2005). Disputes of material fact precluded resolution of Uribe-Bautista's claim of ineffective assistance, and a hearing took place to resolve the matter.

At the hearing, Uribe-Bautista and Mitchell told conflicting stories about how events unfolded immediately after his sentencing hearing. Ultimately, however, the burden falls to

Uribe-Bautista to prove by preponderance of the evidence that he requested Mitchell file a notice of appeal. He did not meet that burden, and thus his petition is denied.

## II.   BACKGROUND

In January 2013, a grand jury indicted Uribe-Bautista on two counts of distribution and possession with intent to distribute 500 grams or more of methamphetamine and cocaine, in violation of 21 U.S.C. § 841 (a)(1)(A)(viii) , (a)(2), and (b)(1)(C). In April 2013, after entering into a plea agreement with the government under Rule 11(c)(1)(C), he pleaded guilty to both counts. As part of that agreement, Uribe-Bautista "agree[d] not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241," but "reserve[d] [his] right to claim that [his] counsel was ineffective in connection with the negotiation of this Agreement or the entry of [his] plea." Plea Agreement ¶ 5. At a sentencing hearing on July 9, 2013, the district court imposed a sentence of 121 months of imprisonment followed by five years of supervised release in accordance with the terms of the plea agreement. Subsequently, his sentence was reduced to 120 months, which was the statutory minimum. Uribe-Bautista filed no notice of appeal of his conviction or sentence.

One year later, within the time period prescribed by 28 U.S.C. § 2255, Uribe-Bautista filed this motion for collateral relief, raising numerous issues—all of which were dismissed with one exception: a factual dispute about whether Uribe-Bautista asked his attorney to file a notice of appeal.

At the evidentiary hearing, Uribe-Bautista testified that shortly after the district court imposed the sentence, he turned to Mitchell and asked to speak with her in the courthouse before his transfer back to jail. She agreed to meet him in lock up with a Spanish interpreter[1] to assist

---

[1] Uribe-Bautista recalled the interpreter had a cane. Throughout the hearing, two interpreters assisted Uribe-Bautista. When the interpreters switched roles, Uribe-Bautista stated the woman helping him was the interpreter who helped him during the conversation in lock-up. Uribe-Bautista's counsel confirmed he had identified the interpreter before the hearing and spoken with her. She could not, however, provide any documentation or information to confirm that a meeting occurred or the contents of the conversation between Uribe-Bautista and Mitchell.

with translation. There, Uribe-Bautista claims he twice told Mitchell he wished to appeal the conviction and sentence. He acknowledged that he had signed a plea agreement with an appeal waiver, but said he did not care about the effect of that agreement.

After the sentencing, the marshals transferred Uribe-Bautista to the custody of the Alameda County Jail, where he spent the majority of the approximately two-week period in "the hole." While in the hole, Uribe-Bautista had limited access to the phone, showers, or human interaction of any kind. During one of his few times out of the hole, Uribe-Bautista claims he called Mitchell to ask about the status of his appeal. He did not hear back before he was transferred to federal custody or before the deadline to file a notice of appeal had passed.

Mitchell, a ten-year veteran federal public defender, also testified. To keep track of communications with clients and case progress, Mitchell takes notes on a note pad or a computer and then transfers those notes into a case-tracking system called "Defender Data" available to other members of her office. Defender Data is a program that ensures seamless representation of clients in the event the lead attorney staffed on the case becomes unavailable. Mitchell's notes from Defender Data were admitted into evidence. These notes were abbreviated versions of handwritten notes taken during her meetings with Uribe-Bautista. There are four entries for July 9, 2013—the date of Uribe-Bautista's sentencing. Those entries cursorily mention the sentencing hearing, sentence imposed, and a meeting with the client. They also indicate Mitchell made a few telephone calls to Uribe-Bautista's friends and family. There are no entries between July 9 and July 25 indicating that she had listened to a voicemail from Uribe-Bautista about an appeal.

In preparation for the hearing, Mitchell reviewed her personal notes, Defender Data, and correspondence to Uribe-Bautista. In the course of reviewing these materials, she did not find any information indicating that Uribe-Bautista had asked her to file a notice of appeal. When pressed on the question of whether Uribe-Bautista asked that a notice of appeal be filed, Mitchell stated that she felt confident saying that Uribe-Bautista never asked her to file a notice of appeal because she would have filed the notice and sent a letter outlining the consequences of pursuing an appeal. Because she did not do either of those things, she believed he never asked her to file the notice.

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(b), a district court may set aside, correct or vacate the sentence of a person in federal custody "[i]f [it] finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." To obtain such relief, the petitioner must demonstrate his constitutional rights were violated by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### IV. DISCUSSION

"[E]ven though no one would think a doctor incompetent for refusing to perform unwise and dangerous surgery, the law is that 'a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.'" *Sandoval-Lopez*, 409 F.3d at 1197 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). An attorney renders constitutionally ineffective assistance of counsel if she refuses to file a notice of appeal when a client tells her to do so, even if doing so would be contrary to the plea agreement and harmful to the client. *Id.* In other words, if Uribe-Bautista proves by preponderance of the evidence that he asked Mitchell to file a notice of appeal, he has proven her performance was deficient. The prejudice is the lost chance to file an appeal, "not that he lost a favorable result that he would have obtained on appeal." *Id.* Because there is no dispute about whether Mitchell filed a notice of appeal (she did not), the only question to answer is whether Uribe-Bautista proved by preponderance of the evidence that he asked her to do so.

Uribe-Bautista and Mitchell recounted very different versions of the events that transpired after the sentencing hearing. Uribe-Bautista claims he asked Mitchell to file a notice of appeal. She denies that conversation ever occurred. At best the two stories are in equipoise—his word against hers. Under that scenario, Uribe-Bautista is not entitled to the relief he seeks because he bears the burden to show his memory is more credible than hers.

There is, however, some evidence to suggest Mitchell's version of events is the more credible of the two: the Defender Data notes. Throughout her representation of Uribe-Bautista,

Mitchell documented actions she took to prepare for the case. She made note of each telephone call, each voicemail received and placed, each meeting, and each hearing. These entries provide few details, but they suggest Mitchell had a practice of recording when an event occurred and the general substance of the call. There are no entries indicating she had a meeting with Uribe-Bautista after the hearing. Indeed, at the hearing, Uribe-Bautista never asked whether she recalled meeting him in lock-up after the sentencing hearing. Nor are there any notes regarding a voicemail from Uribe-Bautista asking about the status of his appeal. The absence of any reference to these two events lends greater credibility to Mitchell's testimony that they never occurred. Accordingly, Uribe-Bautista failed to carry his burden to prove a violation of his right "to bet on the possibility of winning the appeal and then winning an acquittal." *Sandoval-Lopez*, 409 F.3d at 1199.

## V.     CONCLUSION

Uribe-Bautista's petition for a writ of habeas corpus is denied.

**IT IS SO ORDERED**.

Dated: May 25, 2016

_____
RICHARD SEEBORG
United States District Judge